CLERK'S OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED

AUG 28 2007

JOHN F. CORCORAN, CLERK
BY: _____
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Case No. 2:07CR15 |
| | : | |
| **v.** | : | **Violations:** 18 U.S.C. §§ 2, 371, |
| | : | 2319 (b)(1), 17 U.S.C. § |
| **DANIEL DOVE,** | : | 17 U.S.C. § 506(a)(1)(A) |

## INDICTMENT

## COUNT ONE

The Grand Jury charges that:

### I. Introduction

At all times material to this Indictment:

1.      Elite Torrents ("ET") was a copyright piracy organization whose members engaged in the willful, illegal reproduction and distribution of copyrighted works over the Internet.

2.      During its existence from in or about October 2004 to in or about May 2005, ET earned a reputation in the Internet piracy community of having a large collection of pirated copyrighted works, such as movies, computer games, software products, and television programs available for download by its members.  Many of the pirated movies copied and distributed by ET members had not yet been made legally available in theaters or on DVD.

3.      ET also became known for its fast download speeds, due in part to its use of a private peer-to-peer ("P2P") network using BitTorrent technology.   As a P2P network, ET's members – or "peers" – copied pirated content directly from other ET members and distributed pirated content directly to other ET members.  BitTorrent technology allowed ET users to

download large files, such as a pirated movie, in pieces from numerous other ET members at the same time.

4.    The ET organization consisted of members' computers and a "tracker" computer. The ET tracker contained a database that kept track of, among other things, the user names of members who were logged-in, the pirated content each logged-in member had on his computer that was available for upload to other members, and the names of files each member had uploaded and downloaded.

5.    Upon joining the ET network, members were assigned to one of twelve (12) different member classifications in increasing order of responsibility and privilege. Administrators and Uploaders were among the higher classifications in the ET organization. Administrators enforced rules designed to encourage ET members to distribute large amounts of pirated content over high-speed connections. Persons with particularly fast Internet connections who were willing to upload pirated content were promoted to the position of Uploader and were responsible for distributing pirated content to other members. Administrators rewarded Uploaders who uploaded large amounts of pirated content by giving them access to a computer server, known as a "top" server, which contained a larger collection of pirated content than what was available to lower-level ET members. Administrators also required ET members to upload at least as much pirated content as they downloaded to remain members. When a member violated these rules, an Administrator could access the tracker and demote or ban the offending ET member.

6.    During the time period relevant to this Indictment, Defendant DANIEL DOVE was both an Administrator and an Uploader in the ET organization.

## II.  The Conspiracy and Its Objects

7.      Beginning in approximately October 2004 and continuing through in or about May 2005, in the Western District of Virginia and elsewhere, the defendant DANIEL DOVE, also known by his online aliases as "Duffman," "McCalister," and "Derkader," conspired with other ET members and agreed to infringe copyrights willfully for purposes of private financial gain, by reproducing and distributing during a 180-day period ten (10) or more copies of one or more copyrighted works, which have a total retail value of more than $2,500, in violation of Title 18, United States Code, Section 2319(b)(1), and Title 17, United States Code, Section 506(a)(1)(A).

## III.  Manner and Means of the Conspiracy

8.      It was a part of the conspiracy that the defendant DANIEL DOVE agreed to conspire with other ET members for the purpose of willfully copying and distributing copyrighted works over the Internet without the authorization of the rightful copyright owners.

9.      It was further a part of the conspiracy that the defendant DANIEL DOVE and co-conspirators did copy and distribute copyrighted works, including movies, television shows, software programs, and computer games, by uploading them to other ET members for further illegal reproduction and distribution.  During the time period relevant to this Indictment, the defendant DANIEL DOVE and other co-conspirators uploaded approximately 43 game titles; 221 motion picture titles; 33 software programs; and hundreds of television shows, with a combined total value of more than $10,000.  ET members, including defendant DANIEL DOVE, downloaded these pirated works thousands of times.

10.     It was further a part of the conspiracy that, in exchange for distributing pirated content to ET members, defendant DANIEL DOVE and other co-conspirators expected to receive and did receive from other ET members pirated content they did not already have.

11.     It was further a part of the conspiracy that ET Administrators, including defendant DANIEL DOVE, enforced rules to ensure that ET members could download a large amount of pirated content at fast speeds from a large variety of ET members.  For example, members were required to upload at least as much pirated content as they downloaded. Administrators, including defendant DANIEL DOVE, rewarded members who uploaded more files than they downloaded by giving those users access to servers containing pirated content not otherwise available to ET members.  By contrast, Administrators demoted or banned ET members who failed to upload as much as they downloaded.  Administrators also banned ET members who repeatedly downloaded pirated files and then did not allow upload of those files to other ET members, a practice was known as a "hit and run."

12.     It was further part of the conspiracy that ET members, including the defendant DANIEL DOVE, would communicate about the group's illegal activities with other group members through Internet Relay Chat ("IRC") – a type of  instant messaging program. Administrators, Moderators and Uploaders, including the defendant DANIEL DOVE, communicated in a private, password-protected IRC channel called "etuploaders" regarding management of the ET organization.  In addition, ET members engaged in private IRC communications with each other to discuss their illegal activities.  For example, on or about March 7, 2005, defendant DANIEL DOVE, wrote in a private IRC session with an ET member using the alias "G", real identity known to the Grand Jury, "we like run the largest p2p torrent site (the best anyways for 0day) . . . we got access to anything we want .. fast as hell."  ("0 day"

refers to content available on or before its commercial release date). Co-conspirator G was also a resident of the Western District of Virginia during the time period relevant to this Indictment and knew defendant personally.

13.    It was further part of the conspiracy that Defendant DANIEL DOVE recognized that the uploading and downloading of copyrighted works through the ET network without the permission of the copyright holders was illegal. At various points during the relevant time frame, including on or around February 15, 2005, defendant DANIEL DOVE provided the following fictitious address of his for his Duffman IRC identity: "duffman@has.9-million.gigs.of.illegal-warez.net."

## IV. Overt Acts

14.    In furtherance of the above conspiracy, and in order to effect the objects thereof, the following overt acts, among others, were committed by defendant and others within the Western District of Virginia and elsewhere:

a.    At various times from in or about October 2004 through in or about May 2005, the defendant DANIEL DOVE, while residing in the Western District of Virginia, was an Administrator of the ET organization. As an Administrator, defendant participated in the day-to-day operations of the ET network. Defendant's actions included promoting ET members for conduct viewed as favorable by the ET organization. For example:

i.    On or about May 14, 2005, the defendant DANIEL DOVE promoted an ET member using the alias "MistarMuffin" to Uploader.

ii.    On or about December 17, 2004, the defendant DANIEL DOVE promoted an ET member using the alias "G" to the status of "Forum Moderator."

iii.    On or about January 20, 2005, the defendant DANIEL DOVE further promoted ET member "G" to "Moderator."

b.    As an Administrator of ET, the defendant DANIEL DOVE also punished ET members who failed to abide by the organization's rules. For example:

i.    On or about May 12, 2005, the defendant DANIEL DOVE demoted an ET member using the alias "r313007" from "Uploader" to "VIP," a status that carried fewer benefits.

ii.    On or about April 27, 2005, the defendant DANIEL DOVE demoted an ET member using the nickname "idle0ne" to "VIP" status after defendant instructed idle0ne to contribute more to the organization or face demotion.

iii.    On or about March 7, 2005, defendant DANIEL DOVE demoted an ET member using the nickname "Bumbi" to "Power User" status. Defendant demoted Bumbi at approximately the same time defendant complained to G that Bumbi was not uploading enough material.

c.    On or about February 16, 2005, defendant DANIEL DOVE rented a computer server with a very fast Internet connection from a company doing business as FusedNetworks.com, ("the FN server"). Defendant connected to and controlled the FN Server from a computer located in the Western District of Virginia. At various times after February 16, 2005, Defendant used the FN Server in furtherance of the conspiracy, by permitting and encouraging trusted ET Uploaders to use the FN Server as a platform for uploading pirated content throughout the ET network, including:

i.    On or about February 17, 2005, defendant DANIEL DOVE granted co-conspirator and ET member "G" access to the FN Server. In an IRC communication,

Defendant then encouraged G to put pirated content that was not already available on ET on the FN Server so that it could be distributed to ET members.

  ii. On or about February 19, 2005, G uploaded the movie "The Wedding Date" to ET members from the FN Server. G informed Defendant of this upload via IRC while it was in progress.

  d. On numerous occasions prior to renting the FN Server, defendant DANIEL DOVE uploaded pirated content to other members of the ET organization, including:

  i. On or about December 6, 2004, the defendant DANIEL DOVE uploaded or caused to be uploaded a pirated copy of the motion picture "Scary Movie 3," which was identified by the filename "Scary.Movie.3.2003.DVDRip.XviD-duff," without the authorization of the copyright holder.

  ii. The defendant DANIEL DOVE also created an information file (also known as a ".NFO" file) that accompanied the pirated copy of Scary Movie 3 he uploaded. The NFO file provided details about the pirated movie, including its video bitrate, the video codec in which it is encoded, and the number of video frames per second. The .NFO file further identified the "Ripper" – the creator of the pirated copy – as "Duffman," and contained a stylized depiction of the word "Duff," followed by the phrase "Duff presents to you."

  iii. On or about December 9, 2004, the defendant DANIEL DOVE uploaded or caused to be uploaded a pirated copy of the movie "Blade: Trinity," one day after its release in theaters.

  iv. On or about January 20, 2005, the defendant DANIEL DOVE uploaded or caused to be uploaded a pirated copy of the movie "Shark Tale."

v.      On or about January 28, 2005, the defendant DANIEL DOVE uploaded or caused to be uploaded a pirated copy of the movie "She Hate Me."

e.      On numerous occasions during the relevant time period, the defendant DANIEL DOVE downloaded pirated copyrighted works to a computer located in the Western District of Virginia, including:

i.      On or about May 19, 2005, the defendant downloaded a pirated copy of the movie "Star Wars: Episode III – Revenge of the Sith," the same day as its commercial release in theaters.

ii.     On or about March 31, 2005, the defendant DANIEL DOVE downloaded a pirated copy of the Microsoft software program "Windows Server 2003."

iii.    On or about January 1, 2005, the defendant DANIEL DOVE downloaded a pirated copy of the motion picture "Sky Captain and the World of Tomorrow" without the authorization of the copyright owner.

15.     All in violation of Title 18, United States Code, Section 371.

## COUNT TWO

The Grand Jury charges that:

1.      From in or about November, 2004, through April, 2005, both dates being approximate and inclusive, in the Western District of Virginia, and elsewhere, the defendant, DANIEL DOVE, willfully, and for purposes of private financial gain, did infringe a copyright by the reproduction and distribution, during a 180-day period, of at least ten (10) copies of one (1) or more copyrighted works which have a total retail value of more than $2,500.

2.      All in violation of Title 18, United States Code, Sections 2319(b)(1), Title 17,

United States Code, Section 506(a)(1)(A) and Title 18, United States Code, Section 2.

A TRUE BILL, this _____ day of August, 2007.

_____
Grand Jury Foreperson

_____
JOHN L. BROWNLEE
United States Attorney


JAY V. PRABHU
Senior Counsel
Computer Crime & Intellectual Property
Section, Criminal Division
U.S. Department of Justice

TYLER G. NEWBY
Trial Attorney
Computer Crime & Intellectual Property
Section, Criminal Division
U.S. Department of Justice

9 of 9